<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| STEVE CUNNINGHAM,<br><br>Plaintiff,<br><br>v.<br><br>HERAEUS INCORPORATED,<br><br>Defendant. | Civil Action No. 19-13014 (MAS) (ZNQ)<br><br>**MEMORANDUM OPINION** |

<u>**QURAISHI, Magistrate Judge**</u>

This matter comes before the Court upon Defendant Heraeus Incorporated's ("Defendant") Motion for Partial Judgment on the Pleadings and Summary Judgment Dismissing the Complaint (the "Motion"). (ECF No. 32.) The undersigned is authorized to hear this matter pursuant to 28 U.S.C. § 636(c)(1). (*See* Consent Order, ECF No. 34.) Plaintiff Steve Cunningham ("Plaintiff") opposed Defendant's Motion, (ECF Nos. 35, 37), to which Defendant replied, (ECF No. 39). In response, Defendant also filed a Motion to Strike. (ECF No. 38.) Plaintiff opposed Defendant's Motion to Strike, (ECF No. 41), and Defendant replied, (ECF No. 42). The Court has carefully considered the parties' arguments and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated herein, Defendant's Motion is granted. Summary judgment will be entered in favor of Defendant as to all claims except Plaintiff's claim for uncompensated overtime for ten weeks between July 2018 and October 2018. The Court will further grant judgment on the pleadings and dismiss Plaintiff's overtime claim as to that period. The Court will, however, give Plaintiff thirty days to file an amended complaint solely as to his claim for unpaid

overtime between July 2018 and October 2018, for which Plaintiff testified he is owed 105 hours of overtime. Defendant's Motion to Strike is granted, in part, and denied, in part.

## I.  **BACKGROUND**[1]

Defendant is a wholly-owned subsidiary of Heraeus Holding GmbH ("Heraeus Holding"), a German Company. (Defendant's Statement of Material Facts ("DMF") ¶ 1, ECF No. 32-1; Plaintiff's Resp. to DMF ("PRMF") ¶ 1, ECF No. 35.) Defendant operates a North American Shared Service Center ("SSC"), which performs financial-related services and functions for Defendant's various subsidiary companies and business units throughout North America. (DMF ¶ 2; PRMF ¶ 2.) Plaintiff was an employee of Defendant until February 19, 2019. (DMF ¶ 3; PRMF ¶ 3.) He worked as an Accounts Payable Specialist on an eight-person team that was part of the SSC. (DMF ¶ 4; PRMF ¶ 4.) Plaintiff's direct supervisor was Accounts Payable Lead, Nancy Mangini ("Mangini"). (DMF ¶ 5; PRMF ¶ 5.)

On October 31, 2018, Plaintiff sent an email to Defendant's President and General Counsel, Yuri Rozenfeld ("President Rozenfeld"), and Vice President of Human Resources, Terry Corcoran ("HR VP Corcoran"), complaining Defendant violated the Fair Labor Standards Act (the "FLSA"), engaged in discriminatory compensation practices, and committed other acts of race and gender discrimination against him. (DMF ¶ 7; PRMF ¶ 7.) Defendant claims that the subject of Plaintiff's FLSA complaint was Mangini's policy of allowing her team to take overtime as paid time off

---

[1] In its Motion to Strike, Defendant challenges Plaintiff's Response to Defendant's Statement of Material Facts, and certain exhibits Plaintiff attached thereto. (Def.'s Br. in Supp. of Mot. to Strike 3, 6, ECF No. 38-1.) The Court is mindful that Plaintiff is proceeding *pro se*, but agrees with Defendant to an extent. In the instances where Plaintiff fails to dispute a supported statement, or asserts only arguments and legal analysis, the Court will simply disregard such improper assertions. *See Rooney v. NVR, Inc.*, No. 18-10670, 2020 WL 1864609, at *1 n.1 (D.N.J. Apr. 13, 2020). The Court, however, does not find it necessary to strike Plaintiff's entire response, and will address noteworthy disputes where particularly relevant.

("comp time"). (DMF ¶ 8.) Plaintiff appears to dispute that it was voluntary, (PRMF ¶ 8; Plaintiff's Statement of Material Facts ("PMF") ¶ 7, ECF No. 37-4), and Mangini certified that "when overtime had not been authorized and a member of my team nevertheless worked more than their scheduled [eight] hours in a day, I would instruct the employees to keep track of such time and allow them to later use the extra time worked as [comp time]." (Mangini Certif. ¶ 7, ECF No. 32-6.) In response, Defendant retained the law firm Buchanan Ingersoll & Rooney PC ("Buchanan") to investigate Plaintiff's complaint.[2] (DMF ¶ 9.) Thereafter, Defendant claims it instructed Mangini to stop that practice and reeducated her and other supervisors as to the FLSA. (DMF ¶¶ 10–11.) Plaintiff denies Defendant reeducated Mangini as to the FLSA, contending she continued automatically deducting one hour from Plaintiff's time regardless of whether he actually took a lunch break.[3] (PRMF ¶ 10.) Following his complaint, Plaintiff was permitted to work overtime whenever he wanted without preapproval. (DMF ¶ 12; PRMF ¶ 12.)

On November 15, 2018, Heraeus Holding informed President Rozenfeld of "Project Q," a plan to transfer most of the SSC's functions to other shared services centers in Germany and Belgium. (DMF ¶ 14; PRMF ¶ 14.) The plan, Defendant alleges, required it to lay off most of the SSC employees. (DMF ¶ 17.) Later that month, Defendant promoted Jean Zhou ("Zhou") to SSC Head. (DMF ¶ 15; PRMF ¶ 15.) Defendant claims Zhou was unaware of Mangini's comp time practice or Plaintiff's complaint. (DMF ¶ 17.) Over the same time period, from October 2018 to January 2019, Defendant claims it received a stream of complaints from one of its subsidiaries,

---

[2] Plaintiff stated he disputes this fact, (PRMF ¶ 9), yet cites to emails evincing Defendant did retain Buchanan to investigate his complaint, (Nov. 7, 2018 Emails, Ex. C6 to PRMF, ECF No. 35-2), and elsewhere admits Buchanan conducted the investigation of his complaint, (PRMF ¶¶ 13, 31).

[3] In support of his response, Plaintiff cites emails between him and Mangini in which she informs him that he must tell her if he is not taking a lunch break so she can cancel the deduction. (Dec. 31, 2018 Emails, Ex. C13 to PRMF, ECF No. 35-2.)

GMSI, that one of its vendor invoices were being paid at a slow pace.[4] (DMF ¶ 19.) Plaintiff was the Accounts Payable Specialist responsible for processing GMSI's vendor invoices. (DMF ¶ 20; PRMF ¶ 20 (noting the fact is misleading because it was not his job performance causing the issue).)

In a report addressing Plaintiff's internal complaint, Buchanan summarized an interview with Plaintiff, noting Plaintiff estimated he had not been paid for 26.25 hours of overtime. (Draft Confidential Report 2, Ex. A to Centeno Certif., ECF No. 32-7.) Plaintiff claims he never told Buchanan he worked 26.25 hours of overtime. (PMF ¶ 11.) On December 21, 2018, HR VP Corcoran met with Plaintiff. (DMF ¶ 25; PRMF ¶ 25.) Defendant claims Plaintiff was told he would be compensated for any overtime hours he was not paid, (DMF ¶ 25), Plaintiff claims he was told he would not be compensated for overtime he worked before becoming a permanent employee on July 2, 2018, (PRMF ¶ 25). The parties agree, however, that after the meeting HR VP Corcoran emailed Plaintiff, asking him to provide his best estimate of the number of overtime hours he worked, but Plaintiff declined, stating he would seek an attorney. (DMF ¶ 26; PRMF ¶ 26.) HR VP Corcoran contacted Plaintiff telling him he would be compensated for the 26.25 hours of overtime, and Defendant paid him $823.33 for 26.25 hours of overtime. (DMF ¶¶ 29–30; PRMF ¶¶ 29–30.) Plaintiff states he never agreed to this amount and Defendant deposited the money in his account without his consent. (PRMF ¶¶ 29–30.) Plaintiff admits he never objected to the

---

[4] Plaintiff does not dispute Defendant received complaints, but asserts "the controller at subsidiary business unit GMSI made it clear that these complaints not a resulting from [sic] Plaintiff job performance at the SSC . . . however the management at SSC use this situation [sic] as an opportunity to retaliate." (PRMF ¶ 19.) Plaintiff cites an email chain in which someone explains, among other things, that "[t]he majority of complaints from vendors have been because THEIR accounting department has not posted the payment." (Nov. 28, 2018 Email, Ex. C8–C9 to PRMF, ECF No. 35-2.)

payment, but stated he was too intimidated. (Pl.'s Dep. 177:10–178:12, 185:2–187:18, Ex. E to O'Hara Certif., ECF No. 32-3; *see also* DMF ¶¶ 32–33; PRMF ¶¶ 32–33.)

Defendant claims that, by January 2019, GMSI's backlog of unpaid invoices was escalated to executives at Heraeus Holding and, by mid-month, Zhou was tasked with preparing a strategy to address the backlog. (DMF ¶¶ 34–35.) Defendant explains that part of Zhou's plan was to reassign responsibility for processing GMSI's vendor invoices to Andrea Smiler ("Smiler"), which was announced on January 21, 2019. (DMF ¶¶ 36–37.) Plaintiff claims that there was no issue with GMSI's invoices at that time, and he voluntarily had Smiler review his work and email Mangini, affirming there was no backlog. (PRMF ¶ 34; *see also* PMF ¶ 16.) Plaintiff asserts this was all part of Defendant's retaliation scheme. (PRMF ¶¶ 34, 37.)

Defendant announced the reduction in force in February 2019. (DMF ¶ 40; PRMF ¶ 40.) Defendant initially planned for Plaintiff to work an additional four weeks to assist with the transition. (DMF ¶ 39; PRMF ¶ 39.) After determining his services were not needed or desired,[5] Plaintiff was terminated on February 19, 2019. (DMF ¶ 41.) On March 19, 2019, Plaintiff signed a Separation Agreement and General Release of Claims ("Separation Agreement"), pursuant to which Defendant paid Plaintiff four weeks of severance and bonus. (DMF ¶ 43; PRMF ¶ 43.) Defendant claims Plaintiff acknowledged and affirmed that he had been paid all compensation and wages due to him as of March 19, 2019, and that he was not retaliated against for reporting any wrongdoing. (DMF ¶¶ 44–45 (citing Separation Agreement §§ 5(B), (D), Ex. J to Corcoran Certif., ECF No. 32-4).) Plaintiff denies releasing his FLSA claims, citing an August 23, 2019 email chain

---

[5] Plaintiff disputes this, asserting it contradicts Defendant's interrogatory answers. (PRMF ¶ 41.) The cited interrogatory, however, states in relevant part "[t]he management team determined it was neither necessary nor desirable for Plaintiff to be put in another challenging situation and the transition team was capable of absorbing the anticipated work." (Def.'s Answers to Pl.'s Interrogatories 16, Ex. B to PRMF, ECF No. 35-1.)

with Defendant's counsel which states, in relevant part, "[t]he only claims you haven't released are FLSA claims." (PRMF ¶¶ 44–45; Aug. 23, 2019 Email, Ex. C18 to PRMF, ECF No. 35-2.) Defendant claims Plaintiff has no evidence he worked 105 additional hours of overtime, and admitted as much during his deposition. (DMF ¶¶ 49–50.) Plaintiff responds that he "was not given any criteria . . . on how to keep track of his comp-time so [he is providing] his best estimate along with his paystub for the first two working weeks in December." (PRMF ¶ 49.) Plaintiff adds that his "estimates are extremely conservative because" they do not include the hour for lunch Mangini automatically deducted. (*Id.*)

## II.   PLAINTIFF'S CLAIMS

In his Complaint, Plaintiff seeks damages for, among other things, alleged violations of the FLSA and for retaliation. (*See* Compl. §§ IV.A, E, F.) Plaintiff's Complaint does not enumerate separate counts, (*see* Compl. §§ III, IV), but Plaintiff's claims can be summarized as followes:

1.   Defendant willfully violated the FLSA by awarding compensatory time in lieu of overtime and by directing Plaintiff not to record more than forty hours on his timesheet. (*Id.* §§ III.2, IV.A.)

2.   Defendant retaliated against him for complaining about the FLSA violations by reducing his responsibilities and, ultimately, terminating him. (*Id.* §§ III.8–9, IV.E.)

3.   Defendant willfully violated the "Whistleblower Protection Act U.S.C. §[ ]5851(b)(4)." (*Id.* § IV.F.)

4.   Defendant intentionally inflicted emotional distress on him. (*Id.* § IV.G.)

5.   Defendant negligently inflicted emotional distress on him. (*Id.* § IV.H.)

In its Motion, Defendant seeks partial judgment on the pleadings and summary judgment dismissing the Complaint, asserting Plaintiff has failed to state an FLSA or whistleblower claim, and Plaintiff has failed to discover evidence sufficient to support his retaliation claim. (Moving Br. 6, 11–12, 24–25, ECF No. 32-2.)

### III.   <u>LEGAL STANDARD</u>

#### A.   Judgment on the Pleadings

"A motion for judgment on the pleadings under [Federal Rule of Civil Procedure ("Rule")] 12(c) 'is analyzed under the same standards that apply to a Rule 12(b)(6) motion.'" *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (quoting *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)). "A motion for judgment on the pleadings will be granted, pursuant to [Rule] 12(c), if, on the basis of the pleadings, the movant is entitled to judgment as a matter of law." *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262 (3d Cir. 2008). "The court will accept the complaint's well-pleaded allegations as true, and construe the complaint in the light most favorable to the nonmoving party, but will not accept unsupported conclusory statements." *Id.* at 262–63. "[I]n deciding a motion for judgment on the pleadings, a court may only consider 'the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.'" *Wolfington*, 935 F.3d at 195 (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)).

#### B.   Summary Judgment

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248).

"In evaluating the evidence, the Court must consider all facts and their logical inferences in the light most favorable to the non-moving party." *Rhodes v. Marix Servicing, LLC*, 302 F. Supp. 3d 656, 661 (D.N.J. 2018) (citing *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002)). "While the moving party bears the initial burden of proving an absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to 'set forth specific facts showing that there is a genuine [dispute] for trial.'" *Id.* (quoting *Anderson*, 477 U.S. at 250). "Unsupported allegations, subjective beliefs, or argument alone . . . cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019). "Thus, if the nonmoving party fails 'to make a showing sufficient to establish the existence of an element essential to that party's case . . . there can be no genuine issue of material fact.'" *Id.* (quoting *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quotation marks omitted)). "In considering the motion, the Court 'does not resolve factual disputes or make credibility determinations.'" *Rhodes*, 302 F. Supp. 3d at 661 (quoting *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995)).

## IV.   DISCUSSION

### A.   FLSA Overtime Claim

Defendant argues it is entitled to judgment on the pleadings as to Plaintiff's overtime claim because Plaintiff failed to allege he worked extra hours during a forty-hour work week. (Moving Br. 11.) Alternatively, Defendant claims it is entitled to summary judgment because it is undisputed that Defendant was unaware of Plaintiff's alleged overtime work. (*Id.* at 15.) In fact, when asked, Defendant contends, Plaintiff refused to estimate the number of hours he worked, and Defendant paid him overtime for 26.25 hours based on his statement to Buchanan. (*Id.* at 16.) Moreover, Defendant claims Plaintiff signed a separation agreement that, in part, affirmed he had been fully compensated for all work he performed. (*Id.* at 17.) Defendant also argues that Plaintiff's

claim must fail because his only evidence of uncompensated overtime is his own estimate, which he testified was not factual. (*Id.* at 21.)

Plaintiff responds that, when the employer fails to maintain accurate time records, the burden of proving overtime work without compensation is relaxed, and that he has satisfied the relaxed burden by coming forward with sufficient evidence to support a reasonable inference of the amount and extent of his work. (Pl.'s Opp'n 8, ECF No. 37.) Specifically, Plaintiff advances "statistical evidence," namely his assertions that his job responsibilities required him to work weekdays from 8:00 a.m. to 5:00 p.m., Eastern Standard Time, and 9:00 a.m. to 5:00 p.m., Mountain Time, which would equate to an eleven-hour work day. (*Id.* at 10.)

In its reply, Defendant asserts that no employee's work schedule was linked to a time zone, Plaintiff's new estimation doubles his previous estimate in his interrogatory answer, and Plaintiff has produced no evidence of him working uncompensated overtime. (Def.'s Reply 4–5, ECF No. 39.)

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). "Generally, an employer must pay its employees at least a specified minimum hourly wage for work performed, 29 U.S.C. § 206, and must pay one and one-half times the employer's regular wage for hours worked in excess of forty hours per week, *id.* § 207." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014). "Any employer who violates the provisions of section 206 or section 207 of [the FLSA is] liable to the employee . . . in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216.

"[T]o state a plausible FLSA overtime claim, a plaintiff must sufficiently allege [forty]

hours of work in a given workweek as well as some uncompensated time in excess of the [forty]

hours." *Davis*, 765 F.3d at 242 (quoting *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711

F.3d 106, 114 (2d Cir. 2013)) (alterations in original). A plaintiff need not identify the exact dates

and times he worked overtime, but must allege he worked forty hours and uncompensated overtime

hours in a week. *Id.* at 243. "For instance, a plaintiff's claim that [he] 'typically' worked forty

hours per week, worked extra hours during such a forty-hour week, and was not compensated for

extra hours beyond forty hours he or she worked during one or more of those forty-hour weeks,

would suffice." *Id.* To further clarify, "a plaintiff must connect the dots between bare allegations

of a 'typical' forty-hour workweek and bare allegations of work completed outside of regularly

scheduled shifts, so that the allegations concerning a typical forty-hour week include an assertion

that the employee worked additional hours during such a week." *Id.* at 243 n.7.

"To recover under the FLSA . . . [a] [p]laintiff must also establish that the defendant-

employer had either actual or constructive knowledge of the plaintiff's overtime work." *Cohen v.

BH Media Grp., Inc.*, 419 F. Supp. 3d 831, 848 (D.N.J. 2019) (quotation omitted). "[A]n employee

satisfies the burden of proof if he or she produces enough evidence to permit a court to make a fair

and reasonable inference that the employee performed work for which he or she received improper

compensation." *Alers v. City of Philadelphia*, 919 F. Supp. 2d 528, 558 (E.D. Pa. 2013) (quoting

*Rong Chen v. Century Buffet & Rest.*, No. 09-1687, 2012 WL 113539, at *6 (D.N.J. Jan. 12, 2012)

(internal quotation marks omitted)) (alteration in original). "If the plaintiff sufficiently adduces

evidence that he worked overtime hours for which he was not compensated, the burden of proof

shifts to the defendant to provide evidence of the exact amount of time worked, or evidence that

otherwise negates the inference to be gleaned from the plaintiff's evidence." *Id.* at 558 (citing *Rong*

*Chen*, 2012 WL 113539, at *6). "An employer who is armed with [knowledge that an employee is working overtime] cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation." *Cohen*, 419 F. Supp. 3d at 848 (quoting *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995) (quoting in turn *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir.1981))).

"Courts have held that plaintiffs who are responsible for recording their own time but fail to report accurate hours worked, have failed to establish a claim for unpaid wages without further evidence that the employer knew or should have known of those hours anyway." *Id.* at 849. "But when a plaintiff can present evidence 'to suggest that [the defendant] attempted to discourage or squelch accurate overtime reporting,' he/she can show that a genuine dispute as to defendant's knowledge of the time worked precludes granting summary judgment in defendants favor." *Id.* "[C]ourts in the Third Circuit have adopted *Holzapfel*'s approach for determining whether the overtime claimed by a plaintiff is compensable based on an employer's knowledge of the performed work." *Alers*, 919 F. Supp. 2d at 558. That is, "an employer must pay for work it suffers or permits," but "an employer cannot suffer or permit an employee to perform services about which the employer knows nothing." *Holzapfel v. Town of Newburgh, N.Y.*, 145 F.3d 516, 524 (2d Cir. 1998). "In certain circumstances courts have found that [the] plaintiff's testimony alone is sufficient to establish a just and reasonable inference as to the extent of the unpaid work performed." *Hughes v. Twp. of Franklin*, No. 13-3761, 2015 WL 9462965, at *6 (D.N.J. Dec. 23, 2015) (comparing *Rong Chen*, 2012 WL 113539, at *7 (finding sufficient evidence where the plaintiffs and the defendant testified that the plaintiffs regularly worked eleven to twelve hours per day six days per week, totaling a minimum of sixty-eight hours weekly, and never received any

overtime pay for that work); and *Rivera v. Ndola Pharm. Corp.*, 497 F. Supp. 2d 381, 389-90 (E.D.N.Y. 2007) (finding sufficient evidence where, in the absence of employer records, the plaintiff testified to her wages, her normal hours, and the number of hours that she worked beyond the normal schedule during the period relevant to the case); with *Adami v. Cardo Windows, Inc.*, No. 12-2804, 2015 WL 1471844, at *10 (D.N.J. Mar. 31, 2015) (finding insufficient evidence where the plaintiffs did not offer credible testimony approximating the number of uncompensated overtime hours); and *Kolesnikow v. Hudson Valley Hosp. Ctr.*, 622 F. Supp. 2d 98, 119 (S.D.N.Y. 2009) ("While there are cases in which FLSA plaintiffs have defeated summary judgment motions based on their own testimony, those plaintiffs have offered credible testimony approximating the number of hours they worked without pay")). A plaintiff's somewhat inconsistent estimates of his uncompensated overtime does not entitle an employer to summary judgment. *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 365 (2d Cir. 2011); *Reinig v. RBS Citizens, N.A.*, No. 15-01042, 2017 WL 8941219, at *8 (W.D. Pa. Aug. 2, 2017); *Brunozzi v. Crossmark, Inc.*, No. 13-4585, 2016 WL 112455, at *5 (D.N.J. Jan. 11, 2016); *Bettger v. Crossmark, Inc.*, No. 13-2030, 2014 WL 2738536, at *9 (M.D. Pa. June 17, 2014).

The Court first addresses Defendant's plea for summary judgment, and begins with Defendant's argument that it was unaware of Plaintiff's alleged uncompensated overtime. The Court is presented with the unusual situation where an employer admittedly discouraged accurate overtime reporting, attempted to correct the discouraging practice upon the employee's internal complaint, and offered to pay any uncompensated overtime, but the employee refused to provide an estimate, instead choosing to seek legal recourse. (Mangini Certif. ¶ 7; DMF ¶¶ 10–11, 25–26; PRMF ¶¶ 25–26; PMF ¶¶ 11.) Additionally, the parties agree that, following Plaintiff's complaint, he was permitted to work overtime without preapproval. (DMF ¶ 12; PRMF ¶ 12.) To the extent

Defendant argues summary judgment should be granted in its favor because it was unaware of overtime work performed before Plaintiff made his internal complaint, Defendant's argument presumes employers have the right to preempt an FLSA claim by attempting to remedy the alleged violation. Defendant has cited no authority to support that assumption, and such an application would overread the actual or constructive knowledge requirement. Our case law merely requires the employer be aware of "work it suffers or permits." *See Holzapfel*, 145 F.3d at 524; *Alers*, 919 F. Supp. 2d at 558. Defendant's practice of preapproving overtime hours and Mangini's policy of counting unapproved overtime as comp time precludes granting summary judgment in Defendant's favor as to Plaintiff's pre-complaint overtime, because Defendant's policies thwarted accurate reporting. *See Cohen*, 419 F. Supp. 3d at 849. On the other hand, because the parties agree Plaintiff "was permitted to work overtime whenever he wanted to without preapproval" after he made the internal complaint, (DMF ¶ 12; PRMF ¶ 12; *see also* Pl.'s Dep. 27:3–6), his failure to accurately report such time is fatal to his claim. Accordingly, as to Plaintiff's claim for uncompensated overtime that accrued before his internal complaint, because Plaintiff alleges Defendant was aware of its employees working uncompensated overtime, and because Defendant maintained practices that discouraged the accurate reporting of overtime, the Court cannot grant summary judgment in Defendant's favor based on its purported lack of knowledge. To the extent Plaintiff is seeking unpaid overtime accruing after his internal complaint, his failure to accurately record the overtime he worked when he, admittedly, was able to freely work and report his overtime, mandates the Court grant summary judgment in Defendant's favor. The Court, now, turns to Plaintiff's proofs and whether a reasonable jury could find in his favor.

Plaintiff's evidence of his uncompensated overtime consists of "his best estimate along with his paystub for the first two working weeks in December." (PRMF ¶ 49.) More specifically,

in his Responses and Objections to Defendant's Request for More Specific Answers to the First Set of Interrogatories ("Plaintiff's More Specific Interrogatory Answers") Plaintiff estimated he worked 105 hours of uncompensated overtime from July 2018 to October 2018. (Pl.'s More Specific Interrogatory Answers 8, Ex. D to O'Hara Certif., ECF No. 32-3; *see also* Pl.'s Dep. 30:20–75:19 (discussing how Plaintiff came up with his 105-hour estimate and noting potential deficiencies in his methodology).) In his Opposition to Defendant's Motion, he now proffers "statistical evidence," asserting he worked three extra hours every day for an unspecified period of time. (Pl.'s Opp'n 10–11.) Applying that methodology to the ten weeks he reported to work overtime in his More Specific Interrogatory Answers, the Court is left with a 150-hour estimate. Plaintiff has failed to put forward any evidentiary support for his claims that he was required to work eleven-hour days. Despite this discrepancy, Plaintiff's proffered fair estimate of his hours worked between July 2018 and October 2018 in his More Specific Interrogatory Answers and his testimony supporting the same is sufficient to state a claim. *See Davis*, 765 F.3d at 242–43 & n.7. Additionally, the Court does not find the Separation Agreement dispositive because Defendant "has not argued that Plaintiff's FLSA claims are precluded by the release of claims contained in the Separation Agreement," (PMF ¶ 20; DRMF ¶ 20), recognizing "parties may not privately settle with prejudice claims arising under the FLSA without court approval or Department of Labor supervision," (Moving Br. 44 (citing *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206– 07 (2nd Cir. 2015)).) As for any months beyond July 2018 and October 2018, Plaintiff has proffered no evidence or even a fair estimate to support a claim. Accordingly, summary judgment is appropriate on any overtime Plaintiff claims he was not compensated for beyond the July 2018 to October 2018 timeframe.

Having determined summary judgment is inappropriate as to Plaintiff's claim of uncompensated overtime between July 2018 and October 2018, the Court finally turns to Defendant's request for judgment on the pleadings. Plainly, Plaintiff's Complaint is devoid of the critical allegations needed to state a plausible FLSA overtime claim. Specifically, Plaintiff did not allege he worked forty hours in any given workweek and did not allege he worked overtime beyond those forty hours in those work weeks. Plaintiff's pleadings are, thus, insufficient to state a claim and Defendant would be entitled to judgment on the pleadings. *Davis*, 765 F.3d at 242. As discussed above, however, it appears Plaintiff may have a meritorious claim to alleged uncompensated overtime for ten weeks totaling 105 hours between July 2018 and October 2018. The Third Circuit has "instructed that a district court must provide the plaintiff with [an] opportunity [to make a curative amendment] even if the plaintiff does not seek leave to amend." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). This Court has applied that instruction in the context of Rule 12(c) motions for judgment on the pleadings. *Culver v. Wardlow*, No. 11-6390, 2012 WL 686016, at *1, *3 (D.N.J. Mar. 1, 2012); *Pineda v. W. Asset Mgmt., Inc.*, No. 11-5191, 2011 WL 6372528, at *3 (D.N.J. Dec. 20, 2011). Accordingly, the Court will dismiss Plaintiff's FLSA overtime claim as to the ten weeks between July 2018 and October 2018 without prejudice. Plaintiff will have thirty days to file an amended complaint. If Plaintiff fails to file an amended complaint within that time, his FLSA claim shall be dismissed with prejudice in its entirety.

## B.    FLSA Retaliation Claim

Defendant argues there is no causal connection between Plaintiff's complaint and any of the alleged retaliatory actions. (Moving Br. 26.) Even if there was, Defendant submits three of the four complained-of actions, namely (1) the offer of Kerri Rios's ("Rios") assistance, (2) Defendant's refusal to introduce Plaintiff as a new employee, and (3) the reassignment of

Plaintiff's responsibilities for GMSI to Smiler, are not materially adverse. (*Id.*) Regarding the reassignment of Plaintiff's responsibilities, Defendant argues it is not materially adverse because it made Plaintiff's job easier; did not affect his title, job description, supervisor, work schedule, or compensation; had no effect on his standing in the company; and was short-lived. (*Id.* at 32–34.) Further, Defendant contends there is no causal connection between Plaintiff's complaint and the reassignment because it is too remote, occurring three months after Plaintiff's complaint. (*Id.* at 37.) Defendant continues that the decisionmaker responsible for the reassignment did not know of Plaintiff's complaint and was done for a legitimate business reason, that is, to solve the backlog. (*Id.* at 38–39.) As for Plaintiff's termination, Defendant claims there was no retaliation because the decision to lay off most of the SSC staff came from Heraeus Holding's plan to transfer its operations to Europe, and Defendant paid Plaintiff four weeks' severance plus six additional weeks of severance, a transition bonus, and his prorated 2018 bonus. (*Id.* at 40–43.) Moreover, Defendant notes Plaintiff signed the Separation Agreement, which acknowledged he was not retaliated against, and argues the reduction in force was a legitimate business decision. (*Id.* at 42–43.)

Plaintiff contends he has established a prima facie case of retaliation. (Pl.'s Opp'n 13.) First, Plaintiff claims the attorney Defendant hired to investigate his complaint told him Mangini's comp time policy did not rise to the level of an FLSA violation, and that his expert opinion would discourage a reasonable employee from pursuing the complaint. (*Id.* at 13–14.) Next, Plaintiff argues the offer of Rios's assistance was disciplinary in nature and would dissuade a reasonable employee from making an FLSA complaint. (*Id.* at 15.) Third, Defendant's refusal to announce Plaintiff as a new employee because it would be awkward, Plaintiff avers, was materially adverse because it was a slight from someone with significant authority, causing mental anguish. (*Id.* at 16.) Further, Plaintiff adds, excluding him from being announced as a new employee was itself

materially adverse because Defendant had a policy of announcing all new employees. (*Id.*) Turning to the reassignment of his GMSI responsibilities, Plaintiff asserts reassignment at Defendant is unprecedented and diminishing an employee's responsibilities without just cause is materially adverse. (*Id.* at 17–18.) Finally, Plaintiff contends the reduction in force was motivated by his complaint because Defendant appreciated that its comp time policy could be the subject of a class action. (*Id.* at 18–19.) Even if his complaint was not the motivating factor, Plaintiff argues his immediate termination was retaliation. (*Id.* at 19–20.)

The FLSA prohibits an employer from terminating or in any other manner discriminating against an employee "because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3). "Claims of unlawful retaliation under the FLSA . . . are analyzed using the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Cohen*, 419 F. Supp. 3d at 850. "Pursuant to the *McDonnell Douglas* framework, [the] plaintiff's initial burden requires [him] to demonstrate a prima facie case of retaliation." *Id.* "To establish a prima facie case of retaliation under the FLSA, a plaintiff must show that: (1) [he] engaged in protected activity; (2) [he] suffered an adverse employment decision; and (3) the adverse decision was causally related to the protected activity." *Id.*

"An adverse employment action 'covers . . . employer actions that would have been materially adverse to a reasonable employee or job applicant.'" *Berrada v. Cohen*, No. 16-574, 2017 WL 1496930, at *5 (D.N.J. Apr. 24, 2017) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006) (discussing Title VII antiretaliation provision)). "In the context of *Burlington*, that meant 'that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Id.*

(quoting *Burlington*, 548 U.S. at 57); *see also Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006). The standard is an objective one, but highly dependent upon the "constellation of surrounding circumstances, expectations, and relationships." *Burlington*, 548 U.S. at 69. "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* at 68.

For the purposes of this Motion, Defendant concedes Plaintiff has established the first element of a prima facie case. (Moving Br. 26.) The Court begins with whether each, or in combination, the complained-of acts rise to the level of material adversity. Plaintiff's understanding of "material adversity" neglects the United States Supreme Court's instruction "that the employer's actions must be *harmful to the point that they could* well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 57 (emphasis added). Other than his termination, the instances Plaintiff advances do not meet that standard. First, the Court does not agree with Plaintiff that the employer, or an employer's representative, denying that its complained-of policy is illegal constitutes a materially adverse act. A simple denial of wrongdoing, or the conclusion after an internal investigation that the employer did nothing wrong, may cause a trusting employee to decide to forego pursuing his complaint, but such action is not harmful to the employee beyond potential perpetuation of the original policy. As the Court reads *Burlington*, a "materially adverse" act must, necessarily, include some harm significant enough under the circumstances to discourage a reasonable employee from making or supporting an FLSA complaint. Without something more, the employer's mere conclusion that its policy was not unlawful cannot constitute retaliation against the complaining employee.

As for the offer of assistance and the refusal to announce Plaintiff as a new employee six months after becoming a permanent employee, the Court finds those actions too do not rise to the level of materially adverse. The Court cannot agree with Plaintiff that, under the circumstances, an employer offering assistance, which the employee declined, would dissuade a reasonable employee from making of supporting an FLSA charge. Similarly, refusal to introduce Plaintiff as a new employee six months after he became a permanent employee because it would be "awkward" is, at most, an unactionable slight. *Burlington*, 548 U.S. at 68.

Next, the Court holds that the reassignment of Plaintiff's responsibilities for GMSI was not materially adverse. In his brief, Plaintiff claims he spoke with another employee who told him reassignment was unprecedented at Heraeus. Plaintiff has produced no evidence to support that assertion, not even testimony from that employee. The Court thus cannot accept the unsupported conclusory statement. Even if the Court did, reassignment, no matter how rare, would not alone be materially adverse. *See Burlington*, 548 U.S. at 70–71; *see also Davis v. DeJoy*, No. 16-4473, 2020 WL 4756273, at *6 (D.N.J. Aug. 17, 2020). Plaintiff does not allege that his standing in the company changed, his pay was reduced, his work schedule altered, or that he was given less desirable work. The Court has been presented with no reason why the change in Plaintiff's assignments would discourage an employee from making or supporting a complaint.

Lastly, the Court addresses Plaintiff's termination. Termination is clearly a materially adverse act, so the Court turns to causation. Plaintiff has discovered nothing to suggest his termination as part of the reduction in force was motivated by his internal complaint. Instead, Plaintiff rests on his bald assertion that the reduction in force was motivated by Heraeus Holding's fear of a class action lawsuit. Absent any evidence to support such a theory, the Court cannot find a dispute of material fact. *Anderson*, 477 U.S. at 249 ("[A] plaintiff [cannot] rest on his allegations

of a conspiracy to get to a jury without 'any significant probative evidence tending to support the complaint.'"). The Court also finds Plaintiff has failed to discover evidence that would suggest his earlier-than-scheduled termination was the result of his complaint. Plaintiff relies on the timing, but under the circumstances the Court holds that alone is not sufficiently suggestive of retaliation. Plaintiff was terminated pursuant to the reduction in force instead of being allowed to work an additional four weeks to assist in the transition. Plaintiff has discovered nothing evincing that the early termination was motivated by his complaint. In fact, the decision to initially keep Plaintiff for the additional four weeks was made well after his complaint and after he told Defendant he intended to seek counsel. (Dec. 21, 2018 Emails, Ex. C15 to Pl.'s Opp'n, ECF No. 37-2.) The Court grants summary judgment on Plaintiff's FLSA retaliation claim.

### C.      Other Claims

Plaintiff's Complaint further appears to include three underdeveloped claims that contain no specific allegations. The Court further notes that Plaintiff has not opposed summary judgment on these claims. First, Plaintiff asserts a claim under the "Whistleblower Protection Act U.S.C. §[ ]5851(b)(4)." (Compl. § IV.F.) That section concerns employees who work in the atomic energy industry and is therefore inapplicable. Second, having failed to allege "behavior that is so extreme that a reasonable person could not endure it," *Cuadra v. Univision Commc'ns, Inc.*, No. 09-4946, 2011 WL 3859727, at *8 (D.N.J. Sept. 1, 2011); *see also N'Jai v. Pittsburgh Bd. of Pub. Educ.*, 487 F. App'x 735, 737 (3d Cir. 2012), the Court will grant summary judgment on Plaintiff's claim for intentional infliction of emotional distress. Similarly, with no particular allegation of harm and only a general assertion of emotional distress, the Court grants summary judgment on Plaintiff's negligent infliction of emotional distress claim. *Moreau v. Walgreen Co.*, 387 F. App'x 202, 204 (3d Cir. 2010); *see also Regan v. Twp. of Lower Merion*, 36 F. Supp. 2d 245, 252 (E.D. Pa. 1999).

## V.    **CONCLUSION**

For the reasons stated above, Defendant's Motion is granted. Summary judgment will be entered in favor of Defendant as to all claims except Plaintiff's claim for unpaid overtime for ten weeks between July 2018 and October 2018, for which he testified he had not been compensated for 105 hours of overtime. The Court will further dismiss his overtime claim as to that period, but grant him the opportunity to file an amended complaint within thirty days. Defendant's Motion to Strike is granted, in part, and denied, in part. An appropriate order follows.

ZAHID N. QURAISHI
UNITED STATES MAGISTRATE JUDGE